**MANDATE**

23-6822-cr
*United States v. Robert Hadden*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of October, two thousand twenty-four.

Present:

>    REENA RAGGI,
>    WILLIAM J. NARDINI,
>             *Circuit Judges,*
>    NATASHA C. MERLE,
>             *District Judge.*[1]

---

UNITED STATES OF AMERICA,

>    *Appellee*,

v.                                                                                  23-6822-cr

ROBERT HADDEN, AKA SEALED DEFENDANT 1,

>    *Defendant-Appellant*.

---

For Defendant-Appellant:           KENDRA L. HUTCHINSON, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY.

For Appellee:                      JANE KIM (Paul M. Monteleoni, Lara Pomerantz, Danielle R. Sassoon, *on the brief*) Assistant United States Attorneys, *for* Damian Williams, United

---

[1] Judge Natasha C. Merle of the United States District Court for the Eastern District of New York, sitting by designation.

1

MANDATE ISSUED ON 12/02/2024

States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard M. Berman, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 25, 2023, judgment of the district court is **AFFIRMED**.

A jury convicted Defendant-Appellant Robert Hadden, an obstetrician/gynecologist, of four counts of inducing female patients to travel in interstate commerce so that he could sexually abuse them at medical appointments, in violation of 18 U.S.C. § 2422(a). The United States District Court for the Southern District of New York (Richard M. Berman, *District Judge*) sentenced Hadden principally to four concurrent terms of 20 years in prison, followed by lifetime supervised release. Hadden now appeals his conviction, challenging one aspect of the jury instructions and various evidentiary rulings at trial. Hadden also raises several challenges to his 20-year sentence. As explained below, we find none of Hadden's arguments persuasive. We assume the parties' familiarity with the case.

I.  **Jury Instructions**

We review "a claim of error in jury instructions *de novo*, reversing only where appellant can show that, viewing the charge as a whole, there was a prejudicial error."[2] *United States v. Tropeano*, 252 F.3d 653, 657–58 (2d Cir. 2001).

Hadden claims that the district court failed to adequately charge the jury on the *mens rea* element of his offense, which here requires a showing that the defendant induced the victims to

---

[2] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

travel across state lines with the intent that he would sexually assault them. *See* 28 U.S.C. § 2422(a). Specifically, he complains that the court declined to give his requested instruction that "[t]he government must establish the intent existed at the time of the inducement, persuasion, enticement or coercion" of Hadden's victims. Appellant's App'x at 817. Absent such an instruction, Hadden argues, the jury could have improperly convicted him based on a finding that Hadden's intent to sexually assault his victims arose impulsively during the medical examinations, long after he had induced them to travel to their appointments.

But such a reading is foreclosed by the detailed instructions provided by the court. The court accurately informed the jury that the government must prove that the defendant had the required *mens rea* when he committed the *actus reus*: Shortly after explaining that the first element of the crime was that the defendant engaged in "knowing persuasion, inducement, enticement, or coercion," the court explained that the defendant must have "*acted with the intent* that the victim named in a particular count would engage in sexual activity that is a crime under New York state law." *Id.* at 1078–79 (emphasis added). The court later reinforced the requirement that Hadden's unlawful intent had to coincide with the inducement when it explained in detail how the *mens rea* is satisfied even if a defendant acts with multiple purposes, so long as the unlawful purpose was a "motivating or significant purpose," and that "[i]t is enough if the defendant has the requisite intent *at the time of the persuasion, inducement, enticement, and coercion.*" *Id.* at 1079—80 (emphasis added). The court again reiterated to the jury, in the context of potential defenses, that the "requisite intent" must exist "at the time" of the inducement, *id.* at 1080, and explained Hadden's stated defense that "he did not have the intent to sexually abuse any specific woman at the time he told them to come back for their next medical appointment," *id.* at 1081, which allowed Hadden "to argue the exact defense theory for which he sought his proposed charge," *United States v.*

*Avenatti*, 81 F.4th 171, 202 (2d Cir. 2023). We have held that jury instructions must be considered "as a whole" and, although "a defendant is entitled to any legally accurate jury instruction for which there is a foundation in the evidence, he does not have a right to dictate the precise language of the instruction." *United States v. Banki*, 685 F.3d 99, 105 (2d Cir. 2012). Because we discern no error in the jury charge, the district court's failure to use the exact language proposed by Hadden provides no basis to disturb his conviction.

## II.  Evidentiary Issues

Next, Hadden raises various challenges to the district court's evidentiary rulings. "We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015). "Even if a decision was manifestly erroneous, we will affirm if the error was harmless." *United States v. McPartland*, 81 F.4th 101, 114 (2d Cir. 2023); *see also* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Because Hadden alleges violations only of the evidentiary rules, not of any constitutional rights, any error would be harmless if we "can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Vayner*, 769 F.3d 125, 133 (2d Cir. 2014).

First, Hadden argues that the district court erred by admitting evidence of Hadden's sexual abuse of additional patients beyond those involved in the charged counts. At trial, Hadden did not dispute that he sexually abused, to some degree, the four victims of the counts charged in the indictment. Notwithstanding Hadden's admission, the district court permitted the government to present limited testimony from five uncharged-act victims and two nurses who witnessed Hadden engaging in a broad range of sexually inappropriate conduct during numerous medical

4

examinations of patients. Hadden complains that the admission of this uncharged-act testimony was cumulative, prejudicial, and more inflammatory than his charged conduct. We disagree. Federal Rule of Evidence 413(a) provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." We have explained that "the practical effect of Rule 413 is to create a presumption that evidence of prior sexual assaults is relevant and probative in a prosecution for sexual assault." *United States v. Schaffer*, 851 F.3d 166, 180 (2d Cir. 2017). Here, nothing disturbs that presumption. The district court properly admitted evidence of Hadden's uncharged acts to allow the government to prove Hadden's longstanding practice of abusing his patients in a variety of ways, and thereby to rebut his defense theory—namely, that his sexual abuse of the charged victims was born of impulse rather than premeditation, such that he lacked intent to abuse them at the time he induced them to cross state lines, and that some of his abusive acts qualified as lawful medical care. *See id.* at 182-84 (affirming a district court's admission of Rule 413 evidence when a defendant's "prior acts demonstrating his sexual interest in minor females are extremely relevant to the question of his intent").

Nor did the district court err in concluding that the probative value of the uncharged acts was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. The admitted testimony on uncharged acts was "no more inflammatory than the conduct alleged in [Hadden's] indictment" and certainly no worse than the particular acts of sexual abuse that Hadden's counsel conceded, during opening statements, that he had committed against the four statutory victims. *Schaffer*, 851 F.3d at 183. Thus, the district court did not abuse its discretion in admitting evidence of Hadden's uncharged acts, because his pattern of sexual predation was

highly probative of his intent to lead the victims to return for further appointments so that he could abuse them, and the admission of these acts did not create a risk of unfair prejudice.

Second, Hadden argues that the district court erred by admitting testimony from charged victims about the subsequent impact that Hadden's sexual abuse had on their lives. "Testimony regarding a crime's impact on a victim is admissible at trial if it is relevant to prove an element of the charged offense and is subject to the normal tests for relevancy and unfair prejudice under Federal Rules of Evidence 401 and 403, respectively." *United States v. Hendricks*, 921 F.3d 320, 329 (2d Cir. 2019). The defense asked questions on cross-examination of witnesses suggesting that Hadden's touching of patients in certain ways during medical appointments was part of a lawful, ordinary course of treatment—that is, not abusive. That questioning implicated whether Hadden induced the victims to engage in "any sexual activity for which any person can be charged with a criminal offense," an integral element of a Section 2422(a) offense. *See* 18 U.S.C. § 2422(a). It was entirely proper for the district court to allow victims to testify how they were traumatized by Hadden's inappropriate physical contact, to rebut the inference that Hadden's conduct was somehow routine. *See, e.g., id.* at 330 ("Testimony regarding how the credit union employees felt after the robbery was relevant because the lingering effects of the robbery may tend to show that they were intimidated at the time of the robbery.").

Third, Hadden challenges the district court's admission of several out-of-court statements reporting his sexual abuse, arguing that they were impermissible hearsay. Hadden specifically objects to (1) statements by one uncharged victim, reporting that Hadden had just assaulted her at a medical appointment, to her boyfriend and to a friend; (2) evidence of the boyfriend's ensuing call to 911, reporting the victim's complaint; and (3) statements by a charged victim, to a gynecologist she saw after Hadden, that she had been sexually abused during exams by a previous

6

gynecologist. As relevant here, Federal Rules of Evidence 803(2) and 803(4) permit a court to admit out-of-court statements if they are "excited utterances" or if they are made for (and reasonably pertinent to) medical diagnosis and treatment, respectively. We conclude that the district court did not abuse its discretion in admitting the contested statements under these hearsay exceptions.

The district court reasonably determined that the statements in the first two categories qualified as excited utterances. Most of those statements were made by an uncharged victim who (a) sent text messages to a friend from a hospital bathroom, reporting Hadden's abuse moments earlier; and (b) then in rapid succession reported the abuse to her boyfriend—all while she was still in a state of shock from Hadden's conduct. These statements fall comfortably within the meaning of "excited utterances," which Rule 803(2) defines as statements "relating to a startling event . . ., made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The boyfriend's statements relaying the victim's reports on a 911 call present a somewhat closer question, but we cannot say that the district court abused its broad discretion in admitting them here. The record allows the inference that the boyfriend, like the victim, was still in an emotional state prompted by learning that Hadden had just abused her. Because the boyfriend's statements were made by a person who had just received first-hand reports of his significant other's peril, and who found them shocking enough to warrant immediate reporting on an emergency basis to the police, those circumstances could be viewed as "startling enough to support application of the excited utterance exception." *United States v. Jones*, 299 F.3d 103, 113 (2d Cir. 2002). And even assuming for the sake of argument that any or all of these hearsay statements were erroneously admitted, the victim herself testified as to the sexual abuse, and we

are confident that the sheer weight of other admissible evidence of Hadden's guilt would have rendered any hypothetical error harmless.

Nor did the district court abuse its discretion in allowing the testimony of Dr. Raeka Talati, a gynecologist who subsequently provided care to one of Hadden's charged victims. Dr. Talati testified regarding her medical reports that recorded the victim's statement that she had experienced "extreme anxiety" with gynecological exams following abuse by her previous gynecologist. Appellant's App'x 543—45. Rule 803(4) permits admission of out-of-court statements that are reasonably pertinent to medical diagnoses or treatment when they describe a patient's "medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). We have held that Rule 803(4) "clearly permits admission into evidence of what [a patient] told [her doctor] about her condition, so long as it was relied on by [the doctor] in formulating [her] opinion." *O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1089 (2d. Cir. 1978). Here, there is no dispute that Dr. Talati relied upon her patient's statements related to the sexual abuse she suffered at the hands of a previous gynecologist—who, the doctor later realized, was Hadden—when considering how to treat her patient. This evidence was clearly probative to show the extent of Hadden's abuse of the victim. And because Dr. Talati's testimony did not recount the particulars of the prior abuse, it was no more inflammatory than the victim's own testimony, which the court properly admitted. Because Dr. Talati's testimony was properly admitted under Rule 803(4), there is no basis for Hadden's argument that the statement was erroneously admitted as a prior consistent statement under Rule 801(d)(1)(B).

Fourth, Hadden challenges the district court's mid-trial ruling that it would allow the government to introduce expert testimony explaining why sexual assault victims might delay disclosure of their abuse. Hadden does not identify any portion of the expert testimony as

8

objectionable. In any event, after the defense questioned two charged victims about their continuing contact with Hadden, the district court reasonably permitted the expert's limited testimony about victims maintaining contact with and not speaking out against abusers with whom they have a relationship of trust. Hadden's claim in this regard fails.

### III. Sentencing

Hadden's final set of claims concerns the district court's imposition of a 20-year prison sentence. Hadden makes three core arguments. First, he contends that the district court had irrevocably committed to a 20-year sentence at the outset of the proceedings, before hearing from the parties, and thereby deprived him of his right to a meaningful presentence allocution. Second, he argues that the district court erred in concluding that his offense involved vulnerable victims, and that his relevant conduct involved a large number of them, which together increased his offense level by four levels under § 3A1.1(b) of the U.S. Sentencing Guidelines. Third, Hadden claims that the district court improperly considered disputed victim impact statements to impose a 20-year sentence that represented a dramatic upward variance from the advisory Guidelines range of 51–63 months. We consider these arguments in turn.

We evaluate criminal sentencing proceedings for procedural reasonableness under a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "Procedural error occurs in situations where, for instance, the district court miscalculates the Guidelines; treats them as mandatory; does not adequately explain the sentence imposed; does not properly consider the § 3553(a) factors; bases its sentence on clearly erroneous facts; or deviates from the Guidelines without explanation." *United States v. McIntosh*, 753 F.3d 388, 394 (2d Cir. 2014). That said, "[e]ven in the case of significant procedural errors, we will not vacate a sentence and remand if the record indicates clearly that the district court would have

imposed the same sentence in any event." *United States v. Rasheed*, 981 F.3d 187, 197 (2d Cir. 2020).

We begin with Hadden's argument that the district court predetermined his sentence before providing him with a chance to address the court, in violation of Federal Rule of Criminal Procedure 32(i)(4)(A)(i)–(iii). We have held that a defendant and his counsel must "be allowed a meaningful right to express relevant mitigating information before an attentive and receptive district judge." *United States v. Feng Li*, 115 F.3d 125, 133 (2d Cir. 1997); *United States v. Gutierrez*, 555 F.3d 105, 110 (2d Cir. 2009). This is because "[a]lthough the distinction is subtle, there is a difference between speaking to a judge when the slate is clean and speaking after sentencing in an effort to have the judge change his mind." *United States v. Gonzalez*, 529 F.3d 94, 98 (2d Cir. 2008). We will vacate a sentence if a defendant was denied the right to presentence allocution. *Id.* Upon careful review of the record, we are convinced that the district court provided Hadden a meaningful opportunity to be heard before it ultimately decided on the appropriate sentence.

The district court provided the parties with an ample opportunity to make their presentencing presentations: Hadden's sentencing hearing took place over three days in June and July 2023. On the first day, the district court reviewed oral and written impact statements submitted predominantly by uncharged victims of Hadden's abuse.[3] At the beginning of the second day, the district court informed the parties that it was considering an upward variance from the Guidelines range to impose concurrent prison terms of 20 years on each count of conviction.

---

[3] The second day, July 24, 2023, comprised the district court's consideration of the applicable Sentencing Guidelines and section 3553 factors, together with the parties' arguments on those points. The third day, July 25, 2023, included a partial continuation of exchanges between the parties and the court regarding mitigating factors, trial testimony, and supervised release conditions, ending with the district court's imposition of Hadden's sentence.

The Court noted that its view of an appropriate sentence was guided by its consideration of the jury verdict, trial evidence, and the Section 3553 factors, which it proceeded to review with the parties in detail. The practical effect of previewing a possible 20-year sentence was to give the defense an opportunity, over two additional days of sentencing hearings, to focus its advocacy on explaining why a lower sentence was more appropriate. Hadden's counsel did just that on two occasions, including a lengthy dialogue with the court regarding objections to the presentence report, the extent of the defendant's remorse, and consequences already suffered by the defendant. The court also invited Hadden on three separate opportunities to address the court personally. Hadden spoke once, stating, in relevant part: "I just want to say that I am very sorry for all the pain I have caused. Thank you." Appellant's App'x at 1722. Hadden was therefore not deprived of the chance to have a meaningful presentence allocution. *See Feng Li*, 115 F.3d at 133.

In urging otherwise, Hadden points to a few of the district court's statements, which he contends demonstrate that it had already settled on the 20-year sentence. *See, e.g.,* Appellant's App'x at 1690 ("it is appropriate to have an upward variance, and in my estimation that should be 20 years on each count"; "my sentence is going to be 20 years"). But the district court expressly clarified throughout the proceedings that it was not imposing but rather "proposing" the 20-year sentence. *Id.* at 1700; *see also id.* at 1717 ("I gave you a preview of what the sentence is in my mind . . . and then I say I am happy to hear from the defense and from the government and from Mr. Hadden."); 1726 ("Before I actually impose that same sentence, I would ask defense counsel if you wish to add anything at this time?"); 1727 ("Anything, Mr. Hadden, that you wish to add before I impose the sentence?"); *see United States v. Gates*, 84 F.4th 496, 502 (2d Cir. 2023) (holding Rule 32(i)(4)(A) "does not . . . mean that the district court must refrain from formulating thoughts about the appropriate sentence until after the defendant and her lawyer have addressed

11

the court" but "simply means that a judge must hear from the defendant and her counsel before reaching a final decision and imposing sentence"). In this context, the district court allowed Hadden and his counsel a meaningful opportunity to speak before it imposed a sentence.

Hadden next argues that the district court erred by increasing his offense level by two points because some of his victims were vulnerable under U.S.S.G. § 3A1.1(b)(1), and by another two points because his relevant conduct involved a "large number" of them under U.S.S.G. § 3A1.1(b)(2). His first argument is easily dispatched. We discern no error in the district court's findings that Hadden "preyed on patients during their pregnancies when they were particularly vulnerable. Some patients who Hadden abused were also vulnerable because they lacked experience with OB-GYN[s] and had difficulty recognizing abuse." Appellant's App'x at 1693. Those findings are more than adequate to show that the four victims of the charged offenses were, in fact, vulnerable.

Hadden also argues that the district court improperly counted his sexual abuse of dozens of additional, uncharged victims as "relevant conduct" under U.S.S.G. § 1B1.3 in determining that his Guidelines should be calculated based on his abuse of "a large number of vulnerable victims." U.S.S.G. § 3A1.1(b)(2). We do have concerns about whether Hadden's abuse of the uncharged victims was properly counted as relevant conduct under U.S.S.G. § 1B1.3. As defined in the Guidelines, Hadden's offenses of conviction were not of the kind that can be grouped together based on the aggregate harm or loss caused by a continuing course of conduct, as is done routinely with (for example) financial crimes, where the court can assign a total dollar amount to a defendant's scheme. U.S.S.G. § 3D1.2(d); *see id.* (excluding offense guideline applicable to 18 U.S.C. § 2422(a) conviction—U.S.S.G. § 2G1.1—from grouping rules of § 3D1.2(d)). Because Hadden's crimes harmed individual victims who cannot simply be aggregated for purposes of the

12

grouping rules, his "relevant conduct" for purposes of calculating his offense level, beyond the four victims listed in the indictment, was limited to those patients he abused "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," U.S.S.G. § 1B1.3(a)(1), and could not be based on "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction," U.S.S.G. § 1B1.3(a)(2) (applying only to offenses requiring grouping of multiple counts under § 3D1.2(d)).

But we need not resolve this limited question of how one aspect of the advisory Guidelines range should be calculated in Hadden's case, because the record makes clear that the district court would have imposed the same statutory maximum sentence even if those additional victims had not triggered a two-level increase in Hadden's offense level. The district court unequivocally stated: "Even based solely on the trial evidence, which established that the defendant sexually abused dozens of victims for more than two decades during medical exams and as their doctor, *and regardless of the offense level calculated by the Court*, the defendant's conduct as proven at trial is not adequately captured in the [G]uidelines." Appellant's App'x at 1693 (emphasis added); *see id.* at 1698 ("Hadden's actions were exceptional and unprecedented and shocking in the extreme, a depraved outlier among criminal offenses . . . the upward variance is deserved, is critical, and is compelled in fact by the 3553(a) factors and that the [G]uidelines are insufficient in this case."). And there is no doubt that the district court had broad discretion to consider the extensive harm that Hadden caused over many years to numerous uncharged victims, in the context of the sentencing factors listed in 18 U.S.C. § 3553(a). Given the district court's clear statement as to the sentence it intended to impose, we discern no reason to disturb Hadden's sentence. *See, e.g., United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (affirming judgment where district court

13

said it would impose a certain sentence however a disputed Guidelines enhancement "ultimately works out [on appeal]," such that "the record indicates clearly that the district court would have imposed the same sentence in any event").

Finally, there is no merit to Hadden's argument that the district court improperly considered victim impact statements from individuals who did not testify at trial. In response to Hadden's concerns about the reliability of these statements, the district court made plain that the challenged statements had no impact on its proposed sentence, stating that the sentence it intended to impose "is the same sentence, is the maximum sentence, whether or not there were victim statements . . . the actual trial record requires a maximum sentence." Appellant's App'x at 1701; 1721 ("The Court need not rely on victim impact statements to reach its proposed sentence of 20 years of incarceration[.]").

\*     \*     \*

We have considered Hadden's remaining arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit